❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 24-900M(NJ) |
| The Cellular Device Assigned Call Number | ) |
| 414-861-4774, as further described in | ) Matter No. 2024R00197 |
| Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 9/25/2024 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/11/2024 @ 10:52 a.m. _____

City and state:   Milwaukee, WI _____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Property to Be Searched**
**Matter No. 2024R00197**

Records and information associated with the cellular device assigned **414-861-4774**, IMEI 358686418364406, (referred to herein and in Attachment B as "**Target Cell Phone**"), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan, Parsippany, NJ 07054.

**ATTACHMENT B**

**Particular Things to be Seized**
**Matter No. 2023R201**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from April 1, 2024, to present:

i.   Names (including subscriber names, usernames, and screen names);

ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.   Local and long-distance telephone connection records;

iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.   Length of service (including start date) and types of service utilized;

vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

Page 2

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that would assist in locating the whereabouts of Marquan C. OWENS (DOB XX/XX/1991) ("OWENS") who is currently wanted for violations of Title 21, United States Code, Sections 846, 841(a)(1), 843(b), and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The Cellular Device Assigned Call Number 414-861-4774, as further described in Attachment A

)
)
)
)
)
)

Case No. 24-900M(NJ)

Matter No. 2024R00197

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846 and 843(b) | Distribution and Possession with Intent to Distribute a Controlled Substance; Conspiracy; Unlawful Use of a Communication Facility to Facilitate the Distribution of a Controlled Substance. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Scott Knipfer*

*Applicant's signature*

Scott Knipfer, USMS TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: 9/11/2024

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter No. 2024R00197**

I, Scott Knipfer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number **414-861-4774, IMEI 358686418364406**, (the "**Target Cell Phone**"), whose service provider is AT&T ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan, Parsippany, NJ 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

4.　　I have been a law enforcement officer since February 28, 2011.　I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.　I am further assigned to the United States Marshals Fugitive Task Force, based out of the Eastern District of Wisconsin.

5.　　I have received extensive training on narcotics and fugitive investigation and cell phone analytics.　I have conducted fugitive, drug, firearms offenses by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.　I know that when conducting an investigation into many drug investigations that the cellular phone data will be a key piece of evidence based on my training and experience.　Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.　I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives, including those engaged in drug trafficking or fugitives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers and fugitives.

6.　　I have also investigated drug trafficking offenses and participated in fugitive apprehension. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

Page 2

7. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

9. This affidavit is intended to show merely that there is sufficient probable cause for the requested legal process and does not set forth all of my knowledge about this matter.

10. I am currently conducting a fugitive investigation regarding Marquan C. OWENS (DOB XX/XX/1991).

11. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the information requested will assist in identifying the whereabouts of Marquan C. OWENS (DOB XX/XX/1991) who is currently wanted for violations of illegal possession and distribution of controlled substances, and conspiracy to do the same, in violations of Title 21, United States Code, Sections 841 and 846; and use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843

Page 3

in the Eastern District of Wisconsin (EDWI) (Case No. 24-M-303) and has an open bench warrant in relation to his failure to appear in state court for drug and fleeing offenses, Milwaukee County Case 2024CF185.

12.     Further, based on the facts set forth in this affidavit, there is probable cause to believe that Marquan C. OWENS (DOB XX/XX/1991) has violated Title 21, United States Code, Sections 841, 843, and 846.  OWENS was charged with these crimes by criminal complaint on January 24, 2024, and is the subject of an arrest warrant issued on the same date.  There is also probable cause to believe that OWENS is aware of these charges and continues to evade law enforcement.  There is also probable cause to believe that the **Target Cell Phone's** location will assist law enforcement in arresting OWENS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

13.     The United States government, including the United States Marshals Service is conducting a fugitive investigation of OWENS who currently has an active arrest warrant in the EDWI for violations of illegal possession and distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846; and use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843 (23-M-303) and has an active bench warrant in Milwaukee County for his failure to appear in state court in relation to drug and fleeing offenses (Milwaukee County Case 2024CF185).

Page 4

14.     On January 24, 2023, OWENS was charged by criminal complaint in the EDWI for violations of in relation to violations of Title 21, United States Code, Sections 841, 846 and 843(b), (24-M-303).  An arrest warrant was issued for OWENS's arrest on February 2, 2024.

15.     On February 7, 2024, case agents executed a federal search warrant on OWENS's residence located at 2950 South 60th Street, Apartment 2, Milwaukee, Wisconsin.  OWENS was not present, but his roommate and co-conspirator, Kevin TENNER, was present.  TENNER indicated to law enforcement that he did not know where OWENS was and TENNER last saw OWENS the evening before.  The federal arrest warrant for OWENS remains active.

16.     On February 13, 2024, a grand jury in EDWI indicted OWENS for violations of Title 21, United States Code, Sections 841, 846 and 843(b) (24-cr-28).  The indictment as to OWENS remains redacted due to his warrant status.

17.     On February 15, 2024, OWENS was scheduled to appear in state court for Milwaukee County case 2024CF185.  OWENS failed to appear for court and a bench warrant was issued for his arrest.   The bench warrant for OWENS remains active.

18.     During the investigation into OWENS, case agents identified several numbers being used by OWENS, including telephone number 414-885-9481.

19.     For example, on December 6, 2023, an undercover agent (UC 1) was involved in a separate investigation at a stop light in the City of Milwaukee.  A vehicle identified as black 2024 Chevrolet Equinox, bearing Wisconsin Fleet plate 20523AFT (Equinox), which was determined to be a rental vehicle, pulled next to UC 1's vehicle.  At that point the two occupants, both black males, began conversing with UC 1 and exchanged numbers with UC 1.  UC 1 stated the front seat

Page 5

passenger provided his name, "Rocky", and obtained two numbers from "Rocky" and the front

seat passenger. Those numbers were identified as 414-885-9481 and 414-627-4800.

20. Shortly after the contact, UC 1 received a call from the subjects and was instructed

to "pull over for a free sample". UC 1 pulled over and exited their vehicle and approached the

Equinox, which had pulled directly behind UC 1's vehicle. UC 1 obtained a "sample" of suspected

fentanyl from the front seat passenger and returned to their vehicle and left the area. The sample

was later weighed and tested, and a weight of 1.1 grams was obtained and the substance later tested

positive for fentanyl. UC 1 was able to obtain video surveillance with still images of the vehicle

and the two subjects inside (Figures 1, 2, and 3).





(Figure 1)                    (Figure 2)

Page 6



(Figure 3)

21.     Based on the prior investigation, case agents are familiar that OWENS goes by the nickname "Rocky".  After reviewing still shot images obtained by UC 1, case agents confirmed that the individual who provided the free sample to UC 1, identified himself as "Rocky", and provided telephone number 414-885-9481, is OWENS.

22.     Case agents have also previously identified the phone number 414-885-9481 as a number being used by OWENS.

23.     On January 5, 2024, Marquan OWENS and another individual were arrested by the Milwaukee Police Department (MPD) after fleeing in a vehicle.  Officers conducted a search of the vehicle and located suspected controlled substances.  Inside the front passenger pocket, officers located two clear plastic bags.  The first bag contained a brown/gray substance which tested positive for methamphetamine (NARK 11-01), cocaine (NARK 11-07), heroin (NARK 11-11) and fentanyl (NARK 11-33). This substance weighed 14.26 grams. The second bag contained a white chunky substance which tested positive for methamphetamine (NARK 11-01 and 11-15), cocaine (NARK 11-07), and fentanyl (NARK 11-33). This substance weighed approximately 18.0 grams. On the driver's floorboard, officers located one clear plastic bag containing two clear plastic bags.

Page 7

The first bag contained a white chunky substance which tested positive for methamphetamine, cocaine and fentanyl and weighed approximately 1.80 grams. The second bag contained 13 individual baggies with a brown chunky substance which tested positive for methamphetamine, cocaine, heroin, and fentanyl and weighed approximately 8.30 grams. On the front passenger floorboard was a double wrapped clear plastic bag containing a white chunky substance which tested positive for cocaine, fentanyl and methamphetamine and weighed approximately 3.52 grams. Officers also observed residual white powder throughout the front compartment of the vehicle, which was collected and tested positive for methamphetamine, cocaine and fentanyl and weighted collectively about 1.60 grams.

24.     Officers also located one bag of white powdery substance discarded in the rear backyard of 4871 North 36th Street, Milwaukee, Wisconsin, which was directly in the flight path which OWENS and the other individual fled on foot. The white powdery substance tested positive for fentanyl, cocaine and methamphetamine and weighed approximately 15.2 grams.

25.     Also, during the search of the vehicle, officers located nine cellphones. Case agents later obtained a federal search warrant for all the phones and identified one of the phones as OWENS's telephone, 414-885-9481. The content on telephone 414-885-9481 was also consistent with OWENS using it.

26.     On January 11, 2024, OWENS was charged for this conduct in Milwaukee County Case 2024CF185.

27.     On January 13, 2024, OWENS's posted cash bail and was released from custody.

28.     Case agents confirmed that after the arrest of OWENS in January 2024, OWENS's telephone number 414-885-9481, was ported to a different phone, and had a service provider as T-Mobile.  This was consistent with OWENS's still using 414-885-9481.

29.     On February 7, 2024, Magistrate Judge Stephen C. Dries authorized the electronic surveillance of OWENS's telephone number 414-885-9481 (24-M-321).  Case agents served the warrant on T-Mobile and learned that on February 7, 2024, OWENS's telephone number 414-885-9841 was no longer active.

30.     Case agents continued to attempt to identify a new telephone number for OWENS and identify his location.

31.     Case agents continued to monitor social media, including YouTube content of OWENS.  Case agents observed OWENS was posting several music videos and interviews following the attempt to arrest OWENS on February 7, 2024.

32.     Case agents specifically identified a YouTube channel labeled "Deadend Quan". Based on my knowledge of the case and individuals engaged OWENS's drug trafficking violations, I know this YouTube page features OWENS's rap videos, albums, and other music related material.  Case agents have monitored this page and observed at least 9 music videos released since February 7, 2024, including one video labeled "U N—a's Though + Get Off Ig. The lyrics discuss "keeping" OWENS's name out "your mouth" and discuss reading things "in black and white" which case agents believe based on the timing of the release in April 2024, is in reference to Criminal Complaint 24-M-303, which was widely distributed throughout social media.

33.     Case agents identified another YouTube channel labeled "Juice Talk TV".  In February 2024, Juice Talk TV released a video, labeled "Deadend Quan addresses snitch

Page 9

allegations, says his name IS GOOD, on the Deadend block (THROWBACK)". During this video, OWENS was the subject of an interview where in the beginning of the interview OWENS stated, "I swear to god, I promise to god nigga I shot my first nigga where I shot my second nigga but the first nigga that told on me I shot right here". OWENS was being recorded walking in the middle of a residential street and pointing while making these comments. Case agents believe that based on the timing of the release and topic of discussion that OWENS was refencing his arrest in Milwaukee County in January, since case agents were aware that there was a significant amount of reaction on social media where OWENS was alleged to have "snitched" to get released from custody.

34.     Case agents noted additional videos that had been released on Juice Talk TV where OWENS was interviewed, including a series of at least five videos over a two-month time span beginning in July 2024. One of the videos is labeled "Deadend Quan Talks paperwork, Being Most Wanted & Releasing music, "IM SOLID & ALWAYS WAS" pt1". This video is an actual one on one interview with an individual case agents believe is the creator or individual running Juice Talk TV, Octavius SIMMONS, and was released on July 27, 2024. Case agents reviewed law enforcement databases and determined Octavius SIMMONS is the registered agent of Juice Talk LLC.

35.     During the interview, OWENS discussed that "you shouldn't believe everything you see on the internet" and when asked what he specifically was talking about, OWENS responded "narc shit, talking police shit" which case agents believe is referring to the rumors of OWENS being a "snitch" or informant. The interviewer, believed to be SIMMONS, then stated "you have been off the grid for a while and the music is still coming out". OWENS responded, "for sure". Later in the interview SIMMONS asked OWENS about being featured in a Fox 6

Page 10

News special "Milwaukee's Most Wanted" which aired in April 2024. OWENS stated "that he had not seen it" but later acknowledged that he "heard about it" then made a reference to him not being an informant since the fact he is a fugitive was highlighted.

36.     During the interview, OWENS was seated in front of a table and had two cellphones in front of him, which both appeared to be iPhones.

37.     Since the release of the videos and interviews on Juice Talk TV, case agents identified a number for SIMMONS as 414-588-1011 from review of OWENS located during his January arrest. While reviewing and analyzing OWENS cellphone download, case agents observed several text messages between OWENS's old number, 414-885-9481 and SIMMONS 414-588-1011 phone number, beginning on September 13, 2023, thru January 4, 2024. The messages are mostly music related and on January 4, 2024, SIMMONS sends OWENS a message stating "What's good Bro this juice talk can you add that post I just sent you to your page in your dm ok IG". This would appear that SIMMONS is confirming that he is the individual behind Juice Talk TV.

38.     Case agents continued to monitor call detail records and other records, via law enforcement databases in an attempt to identify a new phone number for OWENS. Case agents reviewed historical call details records from numbers associated with OWENS, like OWENS's old telephone number 414-885-9481, and saved in OWENS's cellphones seized during his January 2024 arrest. Case agents received limited records as of this affidavit but know that the **414-861-4774 (Target Cell Phone)** has been in contact with individuals identified as known associates and are known by case agents to have had contact with OWENS.

39.     Telephone number 414-865-7755 was labeled as contact "Wf" in OWENS's seized phone. Based on the investigation and content from the phone extraction, case agents believed

Page 11

414-865-7755 belonged to Kennecia Terry, who has a child in common with OWENS. Case agents reviewed subscriber information for 414-865-7755, which list to Mario Spencer. Based on the investigation into telephone number 414-865-7755, case agents believe Mario Spencer is related to Kennecia Terry. Case agents observed that between June 20, 2023, and February 7, 2024, telephone number 414-865-7755 had 570 contacts with OWENS's old telephone number 414-885-9481. Case agents also observed that between April 24, 2024, and July 22, 2024, telephone number 414-865-7755 had 64 contacts with **414-861-4774 (Target Cell Phone).**

40. Telephone number 920-313-1839 was an unnamed contact in OWENS's seized phone. Case agents reviewed subscriber information for 920-313-1839, which list to Leslie Lenard. Case agents are not clear how OWENS is connected to this person; however, between June 22, 2023, and February 9, 2024, telephone number 920-313-1839 had 954 contacts with OWENS's old telephone number 414-885-9481. Case agents also observed that between April 24, 2024, an August 12, 2024, telephone number 920-313-1839 had 21 contacts with **414-861-4774 (Target Cell Phone).**

41. Telephone number 414-416-5978 was labeled as contact "Too Wop" and "Toochie Rotchie" in OWENS's seized phone. Case agents reviewed subscriber information for 414-416-5978, which list to Sharkita R. Jones. Another possible subscriber for the number was Cameron J. Canady Sr. Following the arrest of OWENS's co-conspirators on February 7, 2024, telephone number 414-416-5978 was one of the top contacts for OWENS's old telephone number 414-885-9481. Case agents observed that between June 22, 2023, and February 8, 2024, telephone number 414-416-5978 had 354 contacts with OWENS's old telephone number 414-885-9481. Case

Page 12

agents also observed that between May 23, 2024, and July 27, 2024, telephone number 414-416-5978 had 3 contacts with **414-861-4774 (Target Cell Phone).**

42.    Telephone number 414-531-9938 was labeled as contact "Big Cat" and "Buck Rotchie" in OWENS's seized phone.   Case agents observed that between June 22, 2023, and February 16, 2024, telephone number 414-531-9938 had 181 contacts with OWENS's old telephone number 414-885-9481.  Case agents also observed that between May 2, 2024, and May 17, 2024, telephone number 414-531-9938 had 3 contacts with **414-861-4774 (Target Cell Phone).**

43.    Telephone number 262-717-8075 was located in OWENS's seized phone without a contact name.  The subscriber is unknown to case agents.  Following the arrest of OWENS's co-conspirators on February 7, 2024, telephone number 262-717-8075 was identified as another top contact for OWENS's old telephone number 414-885-9481.   Case agents observed that between November 26, 2023, and February 11, 2024, telephone number 262-717-8075 had 26 contacts with OWENS's old telephone number 414-885-9481.  Case agents also observed that between May 1, 2024, and August 17, 2024, telephone number 262-717-8075 had 27 contacts with **414-861-4774 (Target Cell Phone).**

44.    Telephone number 414-491-7746 was located in OWENS's seized phone with the contact's name of "Cus Kiya" and "Niema Green".  The subscriber is believed to be Kiyah Green based on review of law enforcement databases.  Telephone number 414-491-7746 was identified as a top contact for OWENS's old telephone number 414-885-9481 during the investigation into the DTO.  Case agents observed that between June 27, 2023, and January 5, 2024, telephone number 414-491-7746 had 164 contacts with OWENS's old telephone number 414-885-9481.

Page 13

Case agents also observed that between May 4, 2024, and June 27, 2024, telephone number 414-491-7746 had 3 contacts with **414-861-4774 (Target Cell Phone).**

45.     Telephone number 414-514-3089 was located in OWENS's seized phone with the contact's name of "Funny".  Telephone number 414-514-3089 was also located in OWENS's co-conspirator phone extraction, Qian COLLINS, as contact name "Cuz Magic".  Case agents observed that between August 10, 2023, and January 17, 2024, telephone number 414-514-3089 had 30 contacts with OWENS's old telephone number 414-885-9481.  Case agents also observed that on May 27, 2024, telephone number 414-514-3089 had a contact with **414-861-4774 (Target Cell Phone).**

46.     Telephone number 414-813-3974 was located in OWENS's seized phone without a contact name.  Following the arrest of OWENS's co-conspirators on February 7, 2024, telephone number 414-514-3089 was identified as another top contact for OWENS's old telephone number 414-885-9481.  Case agents observed that between February 8, 2024, and February 9, 2024, telephone number 414-514-3089 had 17 contacts with OWENS's old telephone number 414-885-9481.  Case agents also observed that between May 18, 2024, and July 1, 2023, telephone number 414-514-3089 had 6 contacts with **414-861-4774 (Target Cell Phone).**

47.     Case agents identified that between July 17, 2024, and July 29, 2024, SIMMONS's telephone number 414-588-1011 had 3 contacts with **414-861-4774 (Target Cell Phone).**

48.     Case agents also observed that between September 6, 2023, and March 1, 2024, OWENS's old telephone number 414-885-9481 had 59 contacts with **414-861-4774 (Target Cell Phone).**  Based on my training, experience, and investigation into the DTO, I know that OWENS would use multiple cellphones numbers.  Drug traffickers like OWENS, will use multiple cellphone numbers to evade law enforcement.  For example, if the drug trafficker believes one

telephone number has been detected by law enforcement, the drug trafficker will stop using that number and rely more on another telephone that it appears law enforcement is unaware of. Drug traffickers may also share a drug telephone numbers at time other co-conspirators or others.

49.     Case agents reviewed law enforcement databased and determined telephone number **414-861-4774 (Target Cell Phone)** service provided AT&T.  Case agents also identified telephone number **414-861-4774 (Target Cell Phone)** has an International Mobile Equipment Identity (IMEI) of 358686418364406, which is an iPhone 12 Pro Max.  This would be consistent the YouTube video interview released on July 27, 2024, in which OWENS was seated in front of a table and had two cellphones in front of him, which both appeared to be iPhones.

50.     Case agents believe telephone number **414-861-4774 (Target Cell Phone)** is being used by OWENS currently.  Case agents know that OWENS does change numbers on a regular basis and believe that **414-861-4774 (Target Cell Phone)** is in fact a valid number for OWENS and are attempting to locate him due to the outstanding warrants for his arrests in Milwaukee County Circuit Court and the Eastern District of Wisconsin Federal Court.

51.     As of the date of this affidavit, OWENS's whereabouts are unknown, and the arrest warrant remains unserved.

52.     Based on my training and experience in locating and apprehending fugitives, the data being sought by this warrant will assist in locating OWENS.  Because successful apprehensions, particularly of fugitives with multiple aliases, often rely on the element of surprise and on taking the fugitive unawares, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most people are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movements or other behavior of the target. Therefore, I cannot predict in advance when this data would need to be accessed and would need

Page 15

access to the data at all times of the day or night in order to ensure a safe and successful apprehension.

53.     I believe the **Target Cell Phone**, whose service provider is AT&T ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used for locating the whereabouts of Marquan C. OWENS ("OWENS") who is currently wanted for violations of Title 21, United States Code, Sections 846, 841(a)(1), and 843(b). Historical information regarding the **Target Cell Phone's** location would also assist in locating OWENS, as it could provide agents additional locations and individuals associated with OWENS and assist in locating OWENS.

## JURISDICTION

54.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## TECHNICAL BACKGROUND

55.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Service Provider's network or with such other reference points as may be reasonably available.

**A. Cell-Site Data**

56.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of

Page 16

cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

57.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

### B. E-911 Phase II / GPS Location Data

58.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise

location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

59.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

60.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

61.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

62. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

63. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

64. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their

subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

65.     In my training and experience, this information may assist in locating the whereabouts of Marquan C. OWENS (DOB XX/XX/1991) ("OWENS") who is currently wanted for violations of Title 21, United States Code, Sections 846, 841(a)(1), and 843(b).

## V.     AUTHORIZATION REQUEST

66.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

67.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

68.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.   The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

69.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize

execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

Case 2:24-mj-00900-NJ    Filed 09/11/24    Page 29 of 34    Document 1

**ATTACHMENT A**

**Property to Be Searched**
**Matter No. 2024R00197**

Records and information associated with the cellular device assigned **414-861-4774**, IMEI 358686418364406, (referred to herein and in Attachment B as "**Target Cell Phone**"), that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 4 Sylvan, Parsippany, NJ 07054.

**ATTACHMENT B**

**Particular Things to be Seized**
**Matter No. 2023R201**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period from April 1, 2024, to present:

  i.   Names (including subscriber names, usernames, and screen names);

  ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii.   Local and long-distance telephone connection records;

  iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.   Length of service (including start date) and types of service utilized;

  vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

Page 23

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

Page 24

c. Information about the location of the **Target Cell Phone** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that would assist in locating the whereabouts of Marquan C. OWENS (DOB XX/XX/1991) ("OWENS") who is currently wanted for violations of Title 21, United States Code, Sections 846, 841(a)(1), 843(b), and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Case 2:24-mj-00900-NJ    Filed 09/11/24    Page 34 of 34    Document 1